UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER NILES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KASA MANAGEMENT SERVICES, INC.,

Defendant.

Case No. 2:26-cv-00425-NR

**FIRST AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Christopher Niles ("Mr. Niles" or "Plaintiff") files this First Amended Class Action Complaint against Kasa Management Services, Inc. ("Kasa" or "Defendant") on behalf of himself and all others similarly situated, seeking an injunction requiring: (1) the provision of accessible hotel rooms and common areas at properties operated and managed by Kasa; and, (2) the provision of accurate information regarding the accessibility characteristics of Kasa-managed properties in advance of reservation.

## INTRODUCTION

1. Plaintiff's primary residence is in Lawrence County, Pennsylvania.

2. Plaintiff has a second residence in the St. Petersburg, Florida area.

3. Plaintiff was formerly employed by the Lawrence County Jail in New Castle, Pennsylvania.

4. As the result of an accident on March 3, 2011, Plaintiff sustained a T6 complete spinal cord injury and became dependent on a wheelchair for mobility.

5. Plaintiff uses a standard-sized manual wheelchair.

6. Plaintiff tests assistive devices for individuals with mobility disabilities and works as a real estate agent.

7. Plaintiff travelled extensively before his injury and continues to do so. He owns property in Florida and travels there often for both business and pleasure.

8. Plaintiff is a regular consumer of hotel services in Pennsylvania, Florida, and other states.

9. Plaintiff has a son who lives and works in the East Liberty area of Pittsburgh. His son's apartment building is not wheelchair accessible.

10. Plaintiff regularly visits his son in Pittsburgh, and he intends to stay in a hotel during his next visit.

11. Plaintiff has regularly reserved hotel rooms that were described as "accessible," only to learn upon arrival that various material elements of the hotel were not accessible.

12. Plaintiff has frequently attempted to obtain information about purportedly accessible hotel rooms, both by visiting hotel websites and by calling the hotels. Despite these efforts, he has often found it difficult or impossible to obtain accurate accessibility information.

## DEFENDANT'S BUSINESS MODEL

13. Defendant manages and operates 75+ properties under the Kasa name.

14. Defendant uses digital technology to lower labor costs by reducing or eliminating on-site staff at the properties that it manages.

15. For example, Defendant's hotels do not employ front desk clerks. Instead, guests at Defendant's hotels check in and check out via their phones using Kasa's "virtual front desk."

16. Kasa has centralized administrative functions that traditionally managed hotels conduct at individual hotel properties, such as accounting and human resources.

17. This management approach allows Kasa to significantly lower its operating expenses by reducing the number of employees at each location. Because of these savings, Kasa hotels are significantly less expensive than traditionally managed hotels of similar quality.

18. The hotels managed and operated by Kasa are "places of public accommodation" that must comply with Title III of the Americans with Disabilities Act ("ADA").

19. Specifically, they are short-term rentals that are "places of lodging" under Title III of the ADA. 42 U.S.C. § 12181(7)(A).

20. Like many technology-driven companies, Kasa seeks to disrupt an established industry. However, its creative business model and innovative technology do not excuse it from meeting the same civil rights obligations as its competitors.

## **THE RESERVATION RULE: DEFENDANT'S OBLIGATION TO COMMUNICATE THE ACCESSIBILITY FEATURES OF THEIR HOTELS**

21. Hotels have an obligation, referred to as "the Reservation Rule," to ensure that disabled guests can meaningfully access their reservation processes. Specifically, hotels must *"[m]odify [] policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms."* 28 C.F.R. § 36.302(e)(1)(i).

22. This obligation applies to *"reservations made by any means…"* 28 C.F.R. § 36.302(e)(1).

23. Both telephonic and online reservation systems are "means" of making reservations.

24. The Reservation Rule also requires hotels to *"[i]dentify and describe accessible features in the hotels and guest rooms offered through [their] reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."* 28 C.F.R. § 36.302(e)(1)(ii).

25. The reservation rule is intended to ensure that consumers with various disabilities can be confident that they will be able to safely and independently use the hotel rooms they reserve.

## PLAINTIFF'S EXPERIENCES

26. When considering a potential hotel, Plaintiff typically reviews the hotel's website for accessibility information.

27. If there is not sufficient information on the website, Plaintiff typically contacts the prospective hotel to obtain the specific accessibility information that he needs.

28. Plaintiff plans to visit Pittsburgh to see his son in April of 2026.

29. During this visit, Plaintiff is considering staying at one of the two Kasa hotels in Pittsburgh.

30. Both properties are convenient to his son's residence, and he is interested in the convenience afforded by the virtual front desk concept offered by Kasa, including the automated check-in and check-out.

## THE MAVERICK BY KASA

31. Plaintiff reviewed Defendant's website for the Maverick Hotel by Kasa in Pittsburgh to learn information regarding the hotel's accessibility features.

32. There is no information on the website regarding the accessibility of the common areas in the hotel.

33. The website provides information regarding the characteristics of the different room categories at the hotel, including for an "Accessible King Room."

34. The general description of the "Accessible King Room" on the website states: "Our ADA-accessible rooms offer 469 square feet of living space, custom made latex beds, and spacious bathrooms fitted with accessibility features. All units are accessible by elevator."

35. The link to the "Accessibility" category under the room description for "Accessible King Room" states: "ADA compliant room type. Call us for more information."

36. The information provided on the hotel's website was not sufficient to permit Plaintiff to determine whether he could safely and independently use the room.

**KASA SOUTH SIDE PITTSBURGH**

37. Plaintiff has reviewed the website for the Kasa South Side Pittsburgh.

38. There is no specific accessibility information provided on the website except that following statement which appears in the "Accessibility" link for each of the room categories at this location: "Not ADA compliant room type. Call us for more information."

39. On information and belief, no accessible rooms are offered on Kasa's website at this location.

40. There was no information on the website that would permit Plaintiff to ascertain whether the hotel could be safely and independently used by him.

41. The property-specific websites for many Kasa managed hotel properties provide no information regarding the accessibility of the rooms and common areas of the properties.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S EMAIL

42. Plaintiff sent an e-mail inquiry[1] to Defendant seeking accessibility information regarding relevant accessibility features at both the Kasa Maverick and the Kasa Southside Pittsburgh.

43. The email stated:

> Hello. I'm considering a stay from April 3 through April 6, 2026, and I'm deciding between two of your Pittsburgh properties. Before making a reservation, I wanted to ask a few questions regarding accessibility.
>
> I use a wheelchair and would need a unit with an accessible bathroom.
>
> Specifically, I am looking for information about whether you offer:
>
> A wheelchair accessible unit
>
> A roll-in or zero threshold shower (or accessible shower with grab bars)
>
> Grab bars near the toilet and in the shower area
>
> Additionally, could you please let me know the heights of the beds (measured from the floor to the top of the mattress) in your accessible units? This information is very important to me in determining whether the room will meet my needs.
>
> I would prefer to confirm these details before making a reservation to ensure the accommodations will work for me.
>
> Thank you very much for your help. I look forward to your response.
>
> Best,

[1] Plaintiff ordinarily calls hotels when he needs accessibility information. In this instance he reached out via email because Defendant's contact information specifies that users should either email Kasa at the listed email address or "Text or Whatsapp us" at the provided number.

Chris

44. Plaintiff received the following response from Defendant:

Hi Chris, thank you for reaching out and sharing what you need for your stay in Pittsburgh.

We do have accessible units at our Pittsburgh properties, but the exact accessibility features (roll-in/ zero-threshold shower, grab bars at toilet and in shower, and bed height) can vary by unit and building layout. I don't have reliable, unit-level measurements like bed height or a guaranteed list of bathroom fixtures available in this system, so I'm not able to confidently confirm that a specific unit will meet your requirements in advance.

The best way to move forward is:

*Choose which of the two Pittsburgh Kasa properties you're considering and the exact dates (April 3-6, 2026), and

*Note that you require a wheelchair-accessible unit with roll-in/zero threshold shower (or shower with grab bars), toilet grab bars, and a bed within your workable height range.

With that information, our team can review the accessible inventory for those dates and see if there is a suitable option that matches your needs before you book. Thank you for your patience while we work to ensure you're comfortable and well-accommodated.

45. Plaintiff sent a follow-up message to the Kasa reservations email address, stating:

"I'm interested in booking with you, and both properties in Pittsburgh are equally convenient for me. Beyond coming in April for my son's birthday, I am

planning additional visits throughout the year with my kids who live in Pittsburgh.

Before I can move forward with future dates, I just need a couple of details:

1. **Bathroom accommodations** – Can you please describe the bathrooms (e.g., number of full baths, shower/tub access, any walk-in showers, accessibility features, etc.)?

2. **Bed Heights** – Could you let me know the height of the beds from the floor to top of the mattress? This information will help me plan for comfort and ease of use.

Thank you very much for your attention and help!

46. Kasa responded to Plaintiff's second message as follows:

"Hi Chris, thank you for your thoughtful follow-up and for sharing your plans to visit your kids in Pittsburgh throughout the year.

For both Pittsburgh properties (Kasa South Side Pittsburgh and the Maverick by Kasa), bathroom layouts and accessibility details like walk-in vs. tub/shower, grab bars, and clear floor space are specific to each individual unit type and sometimes even to specific units. In this system I don't have reliable unit-level specs such as: exact bathroom configuration (roll-in vs low-threshold vs tub), location/number of grab bars, or measured bed height from floor to top of mattress, so I'm not able to accurately describe or guarantee those details in advance for a particular accessible unit.

What I can do is note that you'll need: a wheelchair-accessible unit, and accessible /walk-in style shower with grab bars and toilet grab bars, and a bed within a specific workable height range, so our team can review the accessible inventory at the two Pittsburgh locations for your April 3-6 dates and for future visits, then follow up with the most suitable options based on the detailed building information they have. Thank you for your patience while we work to make sure any stay you book will be as comfortable and practical as you need it to be."

47. Kasa sent a follow-up e-mail to Plaintiff, which stated:

"Hi Christopher.

Thank you for reaching out to inquire about a reservation with Kasa! We wanted to follow up with you as our availability is limited. Please let us know if you are still interested, and we would be happy to check our availability and confirm your reservation. We would hate you to miss out if you're still interested. We hope to have the opportunity to host you!"

48. Kasa did not provide any further accessibility information "based on the detailed building information they [Kasa] have."

49. Defendant's statement that "accessibility details like walk-in vs. tub/shower, grab bars, and clear floor space are specific to each individual unit type and sometimes even to specific units" further clouds the issue.

50. The 2010 ADA Standards for Accessible Design (the "Standards") dictate the number of accessible guest rooms with mobility features that hotels must provide, and set specific requirements for, *inter alia*, the toileting and bathing facilities, clear floor space, and

doorways in such rooms. Grab bars, for example, should not be "specific to each individual unit type and sometimes even to specific units."

51. Despite reviewing Kasa's website and emailing Kasa twice, Plaintiff cannot independently assess whether Kasa's accessible rooms meet his accessibility needs as required by 28 C.F.R. § 36.302(e)(1)(ii).

## **JURISDICTION AND VENUE**

52. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

53. Personal jurisdiction exists because Defendant owns, manages and/or operates hotels within the District.

54. Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

55. Plaintiff Niles, at all times relevant hereto, is and was a resident of Lawrence County, Pennsylvania. Plaintiff is a wheelchair user who is limited in the major life activity of walking.

56. Defendant Kasa Management Services, Inc. is a Delaware corporation headquartered at 221 Pine Street, Suite 500, San Francisco, California 94104.

## **CLASS ALLEGATIONS**

57. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure and on behalf of himself and the following class: All individuals with mobility disabilities who rely upon a standard-sized wheelchair for mobility: 1) who have accessed Kasa's website and visited the pages relating to accessible rooms at Kasa hotel properties; and/or 2) who

have communicated with Kasa seeking information related to the accessibility elements of Kasa hotel properties. This definition may be refined after discovery is completed.

58. Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court and will facilitate judicial economy. Plaintiff believes that he will be able to prove numerosity by discovering data maintained by or on behalf of Defendant.

59. Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

60. Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services, and facilities due to the policies and practices described above. The questions of law and fact common to the class include, but are not limited to:

a) Whether Defendant owns, operates and/or controls the website(s) at issue;

b) What hotels does Kasa own, manage and/or operate;

c) Whether all Kasa hotels provide the number of guest rooms with mobility features required by the 2010 ADA Standards for Accessible Design;

d) Whether all purportedly accessible rooms at Kasa meet the design specifications set by the 2010 ADA Standards for Accessible Design;

e) What information Kasa possesses regarding the accessibility characteristics of the properties that it owns, manages and/or operates;

f) What actions are required for Kasa to provide information relating to the accessibility characteristics of the rooms on its digital platforms for the hotels that it owns, manages and/or operates;

g) What actions are required for Kasa to provide accurate and timely information relating to the accessibility characteristics of its mobility-accessible rooms in response to inquiries by potential guests; and,

h) What options are available to Kasa to ensure that its accessible rooms can be safely and independently used by individuals using a standard-sized wheelchair.

61. Adequacy of Representation: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

62. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION
### For Violations of 42 U.S.C. §§ 12181, *et seq.*

63. Plaintiff incorporates by reference each and every allegation herein.

64. Plaintiff brings this claim individually and on behalf of the class.

65. Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

66. Defendant provides public accommodations under the ADA. 42 U.S.C. § 12181(7)(A).

67. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

68. Defendant owns and/or operates one or more websites which provide information regarding Kasa owned, managed and/or operated hotels that are places of public accommodation under Title III of the ADA.

69. Defendant is responsible for ensuring that its human agents and/or customer-facing artificial intelligence provide accurate and timely information to potential guests with qualified disabilities who make inquiries regarding the accessibility elements in the common areas and accessible rooms of Kasa-managed hotel properties.

70. Defendant has engaged in illegal disability discrimination by, without limitation, failing to provide information regarding rooms and common areas of hotels that it owns, manages and/or operates on its website; by failing to ensure that its agents and/or customer-facing artificial intelligence provide accurate and timely information regarding the accessibility elements of Kasa managed hotel properties; and/or, by failing to otherwise communicate timely and accurate information regarding the accessibility elements of the common areas and accessible rooms of hotels that it owns, manages and/or operates.

71. Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

a) denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at hotels that it owns, manages and/or operates;

b) affording individuals with mobility disabilities unequal access to goods, services or facilities;

c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

d) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

72. Defendant's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to the Plaintiff and the class.

73. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to provide: a) accurate and timely information regarding the accessibility elements of the common areas and accessible rooms of

Kasa managed hotel properties; and, b) accessible rooms and common areas in Kasa managed hotel properties.

c. An Order Certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

d. Payment of costs and reasonable attorneys' fees as provided for by law; and such other additional or alternative relief as the Court finds just and proper.

Dated: March 27, 2026

Respectfully Submitted,

/s/ *R. Bruce Carlson*

R. Bruce Carlson (PA 56657)
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
(724) 730-1753

*Counsel for Plaintiff*